UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Liberty Mutual Insurance Company                CV-07-0880
                                                (CPS)
                Plaintiff,
                                                AMENDED
        - against -                             MEMORANDUM
                                                OPINION AND
WAWA Tours, Inc.                                ORDER
William Ruiz
Fairmont Insurance Brokers, Ltd.

                Defendants.

----------------------------------------X

SIFTON, Senior Judge.

Plaintiff Liberty Mutual Insurance Company ("Liberty") brings claims for breach of contract, negligent misrepresentation, and intentional misrepresentation against Defendants WAWA Tours, Inc. ("WAWA"), William Ruiz ("Ruiz"), and Fairmont Insurance Brokers, Ltd. ("Fairmont").  Now before this court is Fairmont's motion to dismiss for failure to state a claim.[1]  For the reasons set forth below, Fairmont's motion is granted in part and denied in part.

## Background

Except as otherwise noted, the following facts are taken from plaintiff's complaint and are presumed to be true for the purposes of these motion, as required by applicable case law. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

---

[1] Though Fairmont's reply papers were received after the date set for their submission, I grant its request, by letter dated September 7, 2007, that they be accepted.

Liberty is a Massachusetts corporation and is an insurance company authorized to transact business and to issue and service commercial automobile liability insurance polices and other insurance coverage in the State of New York.

Defendant WAWA is a corporation organized and existing under the laws of the State of New York with its principal place of business at 81-14 Baxter Avenue, Apt. 5C, Jackson Heights, New York.  Defendant Ruiz is the owner of WAWA and resides at the same address as WAWA's place of business.

Defendant Fairmont is a domestic business corporation organized and existing under the laws of the State of New York, with its principal place of business at 1600 60th Street, Brooklyn, New York.

The New York Automobile Insurance Plan (the "Plan") is an unincorporated entity that was established pursuant to N.Y. Ins. Law § 5301 *et seq*.[2]  The Plan was established to provide coverage to individuals and/or businesses unable to obtain coverage in the voluntary insurance market.  New York residents who are eligible for but unable to obtain automobile insurance may submit an

---

[2] N.Y. Ins. Law §5301 provides:

(a) All insurers licensed to write motor vehicle insurance in this state shall subscribe to and participate in the reasonable plan or plans, approved, or which may be approved, by the superintendent after consultation with such insurers, for equitable apportionment among such insurers of applicants for such insurance who are in good faith entitled to but are unable to procure it through ordinary methods.
(b) Amendments to the plan may be made by the committee designated to administer the plan, subject to the approval of the superintendent, or shall be made at the direction of the superintendent.

application to the Plan. The Plan then assigns applicants to automobile insurers licensed to do business in the State of New York who, in turn, are required to accept assignments from the Plan. The Plan provides for coverage of public transportation vehicles, defined as including taxis, limousines, school, church and urban buses, medical transportation vehicles and other similar vehicles.

In providing for coverage of such vehicles, the Plan provides for the equitable distribution of risks assigned to insurance companies. Thus, prospective insureds, and their brokers, complete and submit a form New York Automobile Insurance Plan Application (the "Application") for coverage to the Plan. The Application is signed by both applicants and brokers. At the time of the submission of the Application, the applicant and broker[3] do not know which insurance carrier will be assigned and required to issue a policy since the application is submitted to the Plan itself. The Plan then assigns the insured to an insurance company, which is required by the Plan to issue a policy unless the applicant fails an eligibility requirement.

Liberty is a servicing carrier for the Plan. With limited exceptions, as a servicing carrier for the Plan, Liberty must issue policies to applicants seeking coverage through the Plan.

---

[3] The broker is required to ensure that the Application is fully completed and includes all necessary information to rate and write the insurance policy.

Applicants, among other requirements, must certify that they have attempted, and were unable, to obtain coverage in the voluntary insurance market.

Pursuant to prescribed formulas established by New York law and contained in the Plan, the premium for public automobile transportation companies is in part based on the following rating factors:

1. Territory in which any and all driving occurs, which the Plan calls "Rating Territory";
2. Type of service, such as airport limo or school bus, which the Plan calls "Rating Classification";
3. Radius or zones of operation;
4. Number of vehicles owned or operated by the insured.

The change of a single rating factor may significantly impact the premium to be paid by the insured.

As is set forth in the Plan, the Rating Territory is based on the highest rated territory in which the public vehicle is operated. The highest rated territory rule does not apply, however, if the vehicles operates on a long distance, which the Plan calls "Zone Basis." The Zone Basis applies when the radius of operations is over 200 miles. The premium for a Zone Basis rating is usually substantially less expensive than either a local (50 mile radius) or intermediate (51-200 mile radius)

territorial rating.

Initial premiums charged for policies issued pursuant to the Plan are estimated by the servicing carrier based on information and codes provided to the servicing carrier in the Application. The Application states in part, "The Applicant understands that the premium shown on this application is an estimated premium. The carrier reserves the right to adjust the premium either prior to or after the issuance of the policy, whenever applicable."

Brokers and applicants must sign the Application. By its signature on the Application, the applicant attests that "[t]o the best of Applicant's knowledge and belief that all statements contained in this application are true and that these statements are offered as an inducement to issue the policy for which the Applicant is applying." Brokers attest, by their signatures, on the Application that, "I have read the New York Automobile Insurance Plan, have explained the provisions to the applicant, and have included in this application all required information given to me by the applicant."[4]

On November 13, 2003 Fairmont and WAWA submitted an

---

[4] Though the Application does not explicitly require the broker to certify the truthfulness of the information contained therein, courts have recognized that the Plan and the common law impose upon brokers the duty that statements of fact in the Application "must be to the best of the [broker's] knowledge," Plan Sec. 15A(1)(e), and "correct." *Panepinto v. Allstate Insurance Co.*, 108 Misc.2d 1079, 1081 (Sup. Monroe, 1981); *see also Liberty Mutual Ins. Co. v. Grand Trans., Inc.*, No. 06 CV 3433 (JG), 2007 WL 764542, at *2-3 (E.D.N.Y. March 12, 2007) (*citing* Plan Secs. 15A(1)(a) and 15A(1)(e) and *Panepinto*).

application to the Plan on behalf of WAWA. The Plan assigned the application to Liberty. On this application, Fairmont and WAWA attested that WAWA had two vehicles. They further attested that WAWA operated one long distance charter service vehicle and one long distance social service vehicle, both in the Eastern to New England Zone. In the application, an individual from Fairmont signed after the following statement:

> I do hereby attest that I am a licensed broker/agent in the State of New York and I am currently certified by the Plan. I have read the New York Automobile Insurance Plan, have explained the positions to the applicant, and have included in this application all required information given to me by the applicant. I acknowledge that I am acting on behalf of the Applicant in submitting this application and have no authority to establish or revise the terms or conditions of coverage.

Applying the Plan's formula to Fairmont and WAWA's application, Liberty determined the applicable, initial premiums. Liberty issued Policy No. AS1-321-091023-014 and Policy No. AS1-321-091023-015 (the "Policies"), providing commercial automobile insurance to WAWA based upon zone rated charter bus service. Liberty did not use the social service classification proposed by WAWA as WAWA did not provide the required documentation for the classification.

Since issuing the Policies, Liberty has obtained information that contradicts the information provided by defendants in their application. Notably, Liberty audited WAWA's dispatch logs and learned that WAWA provided charter service from Brooklyn to

Atlantic City, not just New England charters. This new information demonstrated that WAWA did not operate on a Zone Basis but rather within a 200-mile radius, or intermediate basis. With this new information, Liberty re-determined the premiums for the Policies pursuant to the Plan. For the first policy, Liberty determined the additional premium due was $219,826.00 and for the second $73,166.20. Liberty invoiced WAWA for the additional premiums. Liberty has made a demand for payment, but defendants have refused to pay the additional premiums.

**Discussion**

In considering a motion pursuant to Rule 12(b)(6), a court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner*, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (*citing Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)), although "mere conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Helt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). Indeed, conclusory allegations "will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). On a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375,

378 (2d Cir. 1995).

Nevertheless, to survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility." *See Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1970, 167 L.Ed.2d 929 (2007). Although the complaint need not provide "detailed factual allegations," *id*. at 1964; *see also ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n. 2 (2d Cir. 2007) (applying the standard of plausibility outside *Twombly's* anti-trust context), it must "amplify a claim with some factual allegations . . . to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007) (emphasis in original) (holding that the plaintiff's complaint adequately alleged the personal involvement of the Attorney General because it was plausible that officials of the Department of Justice would be aware of policies concerning individuals arrested after 9/11). The test is no longer whether there is "no set of facts" that plaintiff could prove "which would entitle him to relief." *Bell Atlantic*, 127 S.Ct. at 1969 (*quoting Conley v. Gibson*, 355 U.S. 45-46 (1957)) ("[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Rather, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns*, 493 F.3d at 98 (*quoting Bell Atlantic*,

127 S.Ct. at 1965).

*Claim I - Breach of Contract*

Liberty has alleged a claim for breach of contract against Fairmont. Of course, in an action for breach of contract, plaintiffs must show the existence of a contract. *Rexnold Holdings, Inc. V. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994). Plaintiff concedes that there is no contract between Liberty and Fairmont and that its breach of contract claim is against WAWA and Ruiz. Pl.'s Mem. in Opp. at 5. Thus, Liberty's first cause of action against Fairmont is dismissed.

*Claim II - Negligent Misrepresentation*

Fairmont argues the Court must dismiss Liberty's cause of action for negligent misrepresentation because Liberty does not have a relationship "sufficiently approaching privity" with Fairmont and because Liberty cannot demonstrate that it relied upon the false statements in the Application.[5]

Under New York law, a cause of action for negligent misrepresentation, which has produced only economic injury, "requires that the underlying relationship between the parties be one of contract or the bond between them so close as to be the

---

[5] Fairmont does not argue that Liberty has otherwise failed to allege the facts necessary to plead a cause of action for negligent misrepresentation.

functional equivalent of contractual privity." *Ossining Union Free Sch. Dist. V. Anderson*, 73 N.Y.2d 417, 419 (1989). The New York Court of Appeals has set forth this requirement in an effort to curb "the breathtaking possibilities for liability in negligence cases involving economic injury". *Liberty Mutual Ins. Co. v. Grand Trans.*, 2007 WL 764542, at *6. In *Ultramares Corp v. Touche*, 255 N.Y. 170 (1931), Chief Judge Cardozo held that a public accounting firm owed no duty of care to third parties not in privity with the firm who were damaged by their reliance upon the firm's inaccurate financial statements. As the New York Court of Appeals discussed in *Ossining*, ". . . in *Ultramares*, the court chose to circumscribe defendants' liability for negligent misstatements by privity of contract or its equivalent, because of concern for the indeterminate nature of the risk" assumed by the defendant in *Ultramares*. Further, "the range of potential plaintiffs was 'as indefinite and wide as the possibilities of the business that was mirrored in the summary' so '[i]f liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class.'" *Ossining*, 73 N.Y.2d at 423 (*quoting Ultramares*, 255 N.Y. at 179-80).

The New York Court of Appeals has articulated various

methods to determine whether a defendant owed a duty of care to a third party such that the "functional equivalent of contractual privity" exists. One test would find such a duty when reliance by the plaintiff was "the end and aim of the transaction." *Ossining*, 73 N.Y.2d at 425 (*quoting Glanzer v. Shepard*, 233 N.Y. 236, 238-39 (1922)). More recently, the New York Court of Appeals has stated a relationship sufficiently approaching privity requires "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." *Parrot v. Coopers & Lybrand, LLP*, 95 N.Y.2d 479, 484 (2000) (citations omitted).

Fairmont argues that there was no reliance by plaintiff because under N.Y. Ins. Law § 5301(a) all insurance carries licensed to write motor vehicle liability insurance in New York must participate in the Plan. However, Liberty does not allege it issued the policy in reliance upon Fairmont's and WAWA's application, but that it estimated its premiums in reliance upon the application.

Fairmont also argues that the third prong of the test discussed in *Coopers Lybrand* is not satisfied - that Liberty and Fairmont lack the required conduct linking the parties to

establish a relationship sufficiently approaching privity. There is, however, significant case law in New York that suggests a broker/insurer relationship such as those that arise under the Plan does have the required conduct linking the parties. *See Glanzer*, 233 N.Y. at 238-39 (Public weighers, retained by bean seller, had duty to prospective buyer, despite the absence of privity between them, because the certificates issued by weighers had been issued for the very purpose of inducing action on the part of the buyer); *Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 385 (1992) (lawyer who, at the direction of his client, provides a letter to a potential lender for the client assuring the lender that the client's mortgage documents represented legal, valid and binding obligations which, once recorded, would be enforceable against the client in accordance with [their] respective terms, may be said to have breached a duty owed to the lender if these assurances prove to be inaccurate) (internal quotation marks omitted); *Ossining Union Free Sch. Dist. v Anderson LaRocca Anderson,* 73 N.Y.2d at 425 (school district permitted to proceed with a negligent misrepresentation claim against engineering consultants although the engineers had been hired, not by the school district, but by an architectural firm conducting an evaluation of districts buildings, because engineers knew that their reports and opinions had been sought for the sole purpose

of providing that information to the school district); *Rodin Prop. Shore Mall v. Ullman*, 264 A.D.2d 367, 368-69 (1st Dep't 1999) ("When a professional . . . has a specific awareness that a third party will rely on his or her advice or opinion, the furnishing of which is for that very purpose, and there is reliance thereon, tort liability will ensue if the professional report or opinion is negligently or fraudulently prepared"); *see also Point O'Woods Ass'n v. Those Underwrites at Lloyd's, London*, 288 A.D.2d 78 (1st Dep't 2001) (J. Saxe dissenting).

Further, several district courts in this circuit have held that insurance brokers, under the Plan, may be liable to insurance carriers, where the Application submitted to the plan contains false or misleading information. *See Liberty Mutual Ins. Co. v. Grand Trans.*, 2007 WL 764542, at *6-7 (Plan does not preclude a misrepresentation cause of action by an insurer against a broker or insured and plaintiff's allegations establish functional privity between plaintiff and defendant broker); *Liberty Mut. Ins. Co. v. Ben's Luzcury Car & Limousine Serv., Inc.*, No. 06 Civ. 3430 (ERK) at 7-9 (E.D.N.Y. Feb. 15, 2007) (the Plan does not preclude a misrepresentation cause of action by an insurer against a broker); *see also N.Y. Auto Ins. Plan v. All Purpose Agency & Brokerage, Inc.*, No. 97 Civ. 3164 (KTD), 1998 WL 695869, at *7 (S.D.N.Y. Oct. 6, 1998) (granting insurers' summary

judgment motion against brokers for common law fraud).[6]

Liberty contends that it has alleged facts sufficient to show the "functional equivalent of contractual privity" does exist.[7] Liberty's allegations satisfy both the "end and aim" test and the three prong test for determining functional privity discussed in *Parrot*. Liberty alleges that Fairmont, in the application it and WAWA submitted to the Plan, acknowledged that Fairmont was certified by the Plan and that the broker signing on behalf of Fairmont had read the Plan. And Liberty has alleged that Fairmont was responsible for ensuring the application was fully completed and included all necessary information to rate and write the insurance policies. Thus, it was clearly the "end and the aim" of the transaction that an insurance carrier

---

[6] Fairmont cites three cases in support of its contention that Liberty cannot adequately plead functional privity because of the lack of conduct linking the parties. All three cases are inapposite as they involve insurers, who failed to discover the misrepresentation until after an event requiring the insurer to act under the policy, claiming the entire amount of the insurer's loss. *Point O'Woods Ass'n v. Those Underwriters at Lloyd's London*, 288 A.D.2d 78, 79 (1st Dep't 2001) (payment for flood damages); *Utica First Ins. Co. V. Floyd Holding*, 294 A.d.2d 351 (2d Dep't 2002) (fees for defense of insured); *Merchants Insurance Co. Of New Hampshire v. The Gage Agency*, 21 A.D.3d 1332, 1334 (4th Dep't 2005) (payment on automobile insurance policy). Moreover, in *Merchants*, the only representation made by the broker was that the insured's signature was bona fide. Here, by contrast, Liberty seeks only the difference in premiums resulting from the misrepresentation, and it was Liberty's own investigation that uncovered the misrepresentation, before any event requiring disbursement under the policy.
   Additionally, the concerns of the New York Court of Appeals in *Ultramares* and its progeny are not present here. The liability of a Plan broker is limited to a determinate amount, the difference between premiums paid and the amount that should have been paid, and to a single determinate party, the Plan insurance carrier. *Liberty Mut. Ins. Co. v. Grand Trans.*, 2007 WL 764542, at * 7. Thus public policy concerns do not militate against allowing this claim for negligent misrepresentation to proceed.

[7] As Liberty has conceded that no contract exists between it and Fairmont, it does not contend here that contractual privity exists.

assigned by the Plan, in this case Liberty,[8] would rely on the information in the Application in setting the estimated premiums.[9]  Moreover, since Liberty alleges that Fairmont acknowledged in the Application that it had read the Plan, Liberty has sufficiently alleged that Fairmont was aware the statements in the application would be used for a particular purpose, namely to determine the initial premiums on the issued policies.  Indeed, Liberty alleges that it, as an insurer

---

[8]  I note that despite the uncertainty of which insurance carrier would be assigned by the Plan, Liberty was a known party under New York Law. *White v. Garente*, 43 N.Y.2d 356, 361 (1977) (a party was sufficiently known to a defendant where its statements "were not extended to a faceless or unresolved class of persons, but rather to a known group possessed of vested rights, marked by a definable limit and made up of certain components.").

[9]  Fairmont also argues that Liberty had a responsibility to promptly investigate the accuracy of any potential insured's statements and that it is the burden of the insurer not the insurance broker to investigate the application's accuracy.  In support, Fairmont cites to *Panepinto*, 108 Misc.2d 1079.  But *Panepinto* is inapposite, as the case concerned Allstate's failure to promptly investigate and, when it did, its failure to do so properly.  Here it was Liberty's investigation that uncovered the misrepresentation.  Moreover, Allstate cross-claimed against the insurance broker for its entire loss, i.e. its payment under the insurance policy to the insured.  In its discussion of Allstate's cross-claim, the *Panepinto* Court acknowledged that "damages, if any, would be limited to the difference between the actual premiums and the premiums which should have been paid", the relief sought by Liberty.  *Id*. at 1082.  Similarly, in *Aetna Casualty & Surety Co. V. O'Connor*, 8 N.Y.2d 359, 364-65 (1960), the Court held that Aetna could not rescind a policy obtained under the Plan by fraud, after payment under the policy was due, because Aetna had failed to discover the fraud during an investigation.  The Court noted "[t]he effect of the Plan is to enforce upon the insurer the necessity to discover fraud at the earliest possible moment, before an accident occurs and the rights of innocent injured third parties have intervened. In this respect, the Plan merely reflects the oft-repeated legislative recognition that liability insurance is not the concern solely of the insured and his insurer." *Id*. at 364.  Thus *Aetna* is inapposite because Liberty did uncover the misrepresentation in its investigation.  Fairmont admits as much when it states "An insurance carrier cannot claim reliance on the insurance broker *when the insurer failed to conduct its own thorough investigation* of statements in the insurance application." Def. Mem. at 5 (emphasis added).  Insofar as Fairmont may argue that Liberty did not promptly investigate, or that Liberty's own negligence is the proximate cause of its damages, the resolution of factual claims is not the subject of a motion to dismiss.

participant in the Plan, issued a policy based on the Application at a rate calculated in reliance upon the statements by Fairmont and WAWA. Finally, Liberty alleges Fairmont included all the necessary information in the application and submitted the application to the Plan.

Thus, for the reasons set forth above, Liberty has sufficiently pleaded a claim for negligent misrepresentation against Fairmont.

*Claims III and IV - Intentional Misrepresentation*

A fraud claim consists of five elements: 1) a representation of material fact; 2) that was false; 3) scienter; 4) reliance by the plaintiff; and 5) injury.[10] *See Vermeer Owners, Inc. v. Guterman*, 78 N.Y.2d 1114, 116 (1991). There are heightened pleading standards where fraud is concerned, as Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." *See id*.

Fraud allegations in a complaint therefore must: "(1) specify the statements that the plaintiff contends were

---

[10] A claim for intentional misrepresentation is the equivalent of a fraud cause of action under New York Law. *Chen v. U.S.*, 854 F.2d 622, 628 (2d Cir. 1988).

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).[11] Although the scienter requirement need not be plead with particularity, "[i]n order to avoid abuse . . . plaintiffs are required to allege facts that give rise to a strong inference of fraudulent intent." *Campaniello Imports, Ltd. v. Saporiti Italia S.P.A.*, 117 F.3d 655, 663 (2d Cir. 1997). The requisite "strong inference" of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Shields*, 25 F.3d at 1128. Defendant argues that plaintiff has failed to sufficiently allege scienter and reliance.

Plaintiff has not alleged any facts with respect to defendant Fairmont that give rise to a "strong inference of fraudulent intent." Plaintiff's allegations are conclusory and, in most cases, fail to distinguish between defendants. *See*, *e.g.* Compl. ¶ 70-71 ("Defendants intentionally and materially misrepresented the true scope of WAWA's radius of operation. Defendants made the material misrepresentations knowing them to be false or in reckless disregard of their accuracy.") Indeed, in

---

[11] I note that Liberty has adequately pleaded these requirements.

the cause of action for Intentional Misrepresentation by Fairmont, Plaintiff alleges "Fairmont and/or WAWA" submitted the application knowing it to contain false information and with the intent to defraud. Compl. ¶ 78-79. There are no particularized facts to support the inference that the defendants acted recklessly or with fraudulent intent.

Plaintiff also fails to plead scienter by showing motive and opportunity. Plaintiff alleges that, by inducing Liberty to issue the insurance policy at reduced rates, "Fairmont sought and did earn brokerage commissions and possibly other compensation." Compl. ¶74. Insofar as Liberty was compelled to issue an insurance policy to WAWA under the Plan, Fairmont may very well have earned some brokerage commission regardless of the rates obtained from Liberty. This sole allegation from the Complaint that relates to Fairmont's motivation fails to establish a "strong inference."

Though I have determined that plaintiff failed to adequately allege scienter, I note again that Fairmont's argument that there was no reliance by plaintiff because under N.Y. Ins. Law § 5301(a) all insurance carries licensed to write motor vehicle liability insurance in New York must participate in the Plan is misplaced. Liberty does not allege it issued the policy in reliance upon Fairmont's and WAWA's application, but that it estimated its premiums in reliance upon the Application.

Thus, for the reasons set forth above, Liberty's causes of action for intentional misrepresentation against Fairmont are dismissed.

## Conclusion

For the reasons set forth above, defendant Fairmont's motion to dismiss is granted in part and denied in part. The clerk is directed to transmit a copy of the within to all parties and to Magistrate Judge Pollak.

SO ORDERED.

Dated :   Brooklyn, New York
          September 19, 2007


                    By: /s/ Charles P. Sifton (electronically signed)
                                United States District Judge